Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| AEROSTAR AIRPORT HOLDINGS, LLC<br><br>Parte Apelante<br><br>v.<br><br>AIRPORT SHOPPES CORP.; AIRPORT CATERING SERVICES, CORP.<br><br>Parte Apelada | TA2025AP00615 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2024CV03607<br><br>Sobre: Sentencia Declaratoria |

Panel integrado por su presidenta, la Jueza Domínguez Irizarry, la Jueza Martínez Cordero y la Jueza Santiago Calderón.[1]

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de mayo de 2026.

Comparece Aerostar Airport Holdings, LLC (Aerostar o parte apelante) mediante un recurso de apelación, para solicitarnos la revisión de la *Sentencia* emitida el 2 de junio de 2025, notificada el día 4, del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Carolina.[2] Mediante la *Sentencia* apelada, el foro primario declaró *Ha Lugar* la *Moción desestimación* presentada por la parte aquí apelada. En consideración a lo anterior, desestimó con perjuicio la *Demanda* incoada por Aerostar.

Por los fundamentos que expondremos, se *confirma* la *Sentencia* apelada.

I

El caso de marras inició, el 22 de octubre de 2024, cuando Aerostar interpuso una *Demanda* sobre sentencia declaratoria

---

[1] Mediante Orden Administrativa OATA-2026-044 del 4 de mayo de 2026, se designó a la Hon. Grisel M. Santiago Calderón para entender y votar en el caso de epígrafe en sustitución de la Hon. Laura Ivette Ortiz Flores, por esta haber dejado de ejercer funciones como Jueza del Tribunal de Apelaciones.
[2] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC TPI), a la Entrada Núm. 28.

contra Airport Shoppes, Corp. (AS) y Airport Catering Services, Corp. (ASC) (en adelante, parte apelada).[3] En esta, adujo que, allá para el 8 de febrero de 1984, la Autoridad de Puertos de Puerto Rico (APPR) y Host International Inc. (Host) suscribieron un acuerdo intitulado *Concession Agreement*, mediante el cual se le confirió a Host el derecho de ser el único concesionario de comidas y bebidas en los terminales de pasajeros del Aeropuerto Internacional Luis Muñoz Marín (Aeropuerto). Según alegó, el referido derecho de exclusividad no se extendía a clubes privados que fueran operados por una línea aérea. Indicó que, posteriormente, mediante un *segundo* acuerdo intitulado *Request for Assignment of Agreement*, Host le cedió a ACS sus derechos bajo el *Concession Agreement*, quien, luego, cedió internamente a AS las responsabilidades operacionales correspondientes bajo el aludido acuerdo. Expuso, además, que mediante un *tercer* acuerdo entre APPR y Aerostar, titulado *Lease Agreement*, esta última se convirtió en la administradora y operadora del Aeropuerto, por lo que el *Concession Agreement* aplicaba en su beneficio y le era vinculante, así como para AS y ACS frente a Aerostar.

Establecido lo anterior, explicó que, allá para el 1 de septiembre de 2023, contrató con CAVU Experiences (AMER) LLC (CAVU) para establecer un *Escape Lounge* en el primer nivel del Terminal B del Aeropuerto, un área en la cual, presuntamente, no existía exclusividad alguna. Particularmente, acentuó que, bajo el aludido acuerdo, únicamente, tenían acceso al referido club aquellos pasajeros que pagaran el costo de admisión o tuvieran una tarjeta de crédito American Express elegible. Además, destacó que el acuerdo expresamente prohibía que se vendiera cualquier comida o bebida, aparte de la cual estaba incluida en el precio de admisión.

---

[3] SUMAC TPI, a la Entrada Núm. 1.

De manera que, razonó que el club operado por CAVU no estaba dedicado a la venta de comida y bebidas. No obstante, lo anterior, manifestó que, cuando se anunció públicamente la apertura del *Escape Lounge,* la parte apelada amenazó con demandar a CAVU por presuntas violaciones a su derecho de exclusividad. Arguyó que Aerostar y la parte apelada implementaron varias enmiendas en lo relativo a los términos, condiciones, obligaciones y responsabilidades que regían la relación entre las partes, las cuales modificaban los términos del *Concession Agreement.* Asimismo, planteó que, mediante acuerdos entre las partes, la parte apelada fue entregando y abandonando ciertos derechos exclusivos en el Aeropuerto, a cambio de extensiones de tiempo, concesiones nuevas, créditos, entre otros privilegios. De modo que, no era cierto que el establecimiento del *Escape Lounge* violentó el derecho de exclusividad concedido a la parte apelada. Más aún cuando, mediante un acuerdo intitulado *Supplementary Agreement,* suscrito por las partes del título en el 2013, se añadió una nueva Sección 1.03 al *Concession Agreement,* mediante la cual se estableció un derecho de *first refusal* respecto a nuevos espacios que estuviesen actualmente arrendados a la parte apelada y que Aerostar determinara, a su único criterio, mantener como una facilidad de comida y bebida; lo cual, a su juicio, era completamente distinto a un derecho de exclusividad.

En mérito de todo lo antes expuesto, peticionó que se emitiera una sentencia declaratoria a través de la cual se estableciera, entre otras cosas, que: (i) la parte apelada renunció a su derecho de exclusividad para la venta de comida y bebida en el Terminal A, B y C del Aeropuerto; (ii) cualquier derecho de exclusividad o *first refusual* de la parte apelada se limita, estrictamente, a la venta de comida y bebidas en las áreas contractualmente designadas y excluyendo el ofrecimiento de bebida y comida; (iii) la parte apelada,

conforme a la enmiendas realizadas al *Concession Agreement,* no gozaba de un derecho de exclusividad, sino, más bien, un derecho de *first refusal,* respecto a nuevos espacios que a la fecha del *Supplementary Agreement* no estaban ocupados por la parte apelada y los cuales Aerostar determinara, a su entera discreción, dedicarlos a la venta de comida y bebida, y (iv) la parte apelada debía rembolsar a Aerostar una suma equivalente a los honorarios de abogado incurridos.

En respuesta, la parte apelada presentó una *Moción de Desestimación.*[4] A través de este escrito arguyó que la sentencia declaratoria era un recurso extraordinario cuyo propósito era disipar una incertidumbre jurídica, sin embargo, en el presente caso, no existía una ambigüedad que requiriera aclaración mediante una declaración judicial. Ello, puesto a que no había duda de la extensión de derechos y privilegios contractuales de ACS y AS bajo *el Concession Agreement.* Específicamente, alegó que el referido acuerdo era claro respecto a que el derecho de exclusividad de la parte apelada solamente cedía en cuanto a la operación de clubes privados operados por líneas aéreas. Siendo así, y en vista de que el *Escape Lounge* no era operado por una línea aérea, razonó que era evidente que CAVU no tenía derecho a operar un club en cualesquiera de los terminales de pasajeros del Aeropuerto. En mérito de lo expuesto, peticionó que se desestimara la demanda, por las insuficiencias de las alegaciones para justificar el remedio de la sentencia declaratoria.

Así las cosas, el 5 de diciembre de 2024, Aerostar presentó una *Urgente Solicitud de consolidación de pleitos.* [5] En esta, peticionó que el caso de epígrafe se consolidara con el alfanumérico SJ2024CV10820, a través del cual la parte apelada interpuso una

---

[4] SUMAC TPI, a la Entrada Núm. 6.
[5] *Íd.,* a la Entrada Núm. 10.

*Demanda* de interdicto preliminar y permanente contra CAVU y Aerostar. Planteó que, ambos pleitos, estaban basados en el mismo *Concession Agreement* y en los supuestos derechos exclusivos que la parte apelada alega que serán violados con el negocio que operará CAVU en el Terminal B del Aeropuerto. Arguyó que la consolidación de ambos pleitos promovería la buena administración de la justicia, la aceleración de las disputas y la reducción de costos en la litigación.

Subsiguientemente, el 12 de diciembre de 2024, Aerostar interpuso una *Moción en torno a moción de desestimación (SUMAC #6).*[6] Mediante este escrito, arguyó que la parte apelada frívolamente intentó implicar en su *Moción de desestimación* la ausencia de controversia entre las partes del título. Sin embargo, planteó que el argumento de la referida parte quedó irremediable disipado con la presentación de la *Demanda* de interdicto antes reseñada. Razonó que la presentación del aludido pleito era suficiente por sí solo para denegar la desestimación. No obstante, lo anterior, solicitó al Tribunal que, de entender necesario la presentación de una expresión puntual e individual a la *Moción de desestimación*, emitiera una orden a tales efectos.

Ese mismo día, la parte apelada presentó *Oposición a solicitud de Consolidación.*[7] Arguyó que no existía idoneidad de parte ni de controversias en los casos que Aerostar solicitó consolidar. Particularmente, puesto a que la *Demanda* del alfanumérico SJ2024CV10820 incluía como parte demandada a CAVU, entidad que pretendía operar el salón privado para pasajeros en el Aeropuerto. De otra parte, planteó que distinto a lo argumentado por Aerostar, la consolidación de los pleitos no promovería la buena administración de la justicia, ya que el remedio del interdicto,

---

[6] SUMAC TPI, a la Entrada Núm. 11.
[7] *Íd.*, a la Entrada Núm. 12.

distinto al de la sentencia declaratoria, requería la celebración de una vista urgente.

En reacción, el 16 de diciembre de 2024, Aerosar presentó *Moción en torno a oposición a solicitud de consolidación (SUMAC #12).*[8] Planteó que la referida oposición no levantaba asuntos que no hubiesen sido cubiertos en su solicitud de consolidación. Por otro lado, peticionó que se tomara conocimiento judicial de que previamente, AS había solicitado que se consolidaran dos (2) pleitos, por ambos tratar sobre el alcance *del Concession Agreement.* Asimismo, solicitó que se tomara conocimiento de que, pese a que la parte apelada arguyó que los remedios interdictales debían atenderse con urgencia, a la fecha de esta moción, CAVU no había sido emplazada.

Luego, el 17 de diciembre de 2024, la parte apelada incoó una *Moción para que se dé por sometida la moción de desestimación sin oposición y se conceda el remedio solicitado.*[9] Expuso que había transcurrido el término de veinte (20) días dispuesto por las Reglas de Procedimiento Civil para que Aerostar presentara oposición a la *Moción de desestimación,* sin que esta hubiese presentado el procedente escrito. A tenor, peticionó que la referida moción se diera por sometida sin oposición.

Al día siguiente, mediante *Orden,* el tribunal de instancia declaró *No Ha Lugar* la solicitud de consolidación presentada por Aerostar.[10]

Ese mismo día, entiéndase el 18 de diciembre de 2024, la parte apelante presentó oposición a que se diera sometida la *Moción de desestimación de* Aerostar sin contar con su posición.[11] Destacó que había dos (2) mociones de Aerostar presentadas en autos las

---

[8] SUMAC TPI, a la Entrada Núm. 13.
[9] *Íd.,* a la Entrada Núm. 15.
[10] *Íd.,* a la Entrada Núm. 17.
[11] *Íd.,* a la Entrada Núm. 18.

cuales solicitaban que se denegara de plano la desestimación por todos los argumentos y fundamentos que favorecían la consolidación de los pleitos. Igualmente, acentuó que en su *Moción en torno a moción de desestimación (SUMAC #6)* se reservó el derecho a presentar la aludida oposición, sujeto a que el Tribunal entendiera necesario que se expresara única y específicamente respecto a la misma.

Evaluados los escritos, ese mismo 18 de diciembre, mediante *Orden*, el foro primario concedió el término solicitado por Aerostar para expresarse individualmente en torno a la solicitud de desestimación.[12] Asimismo, mediante una segunda *Orden* de esa misma fecha, el referido foro declaró *No Ha Lugar* la petición de la parte apelada para que se diera por sometida su *Moción de desestimación* sin oposición.[13]

Así las cosas, el 30 de diciembre de 2024, Aerostar presentó, a través de un mismo escrito, su oposición a la desestimación y una solicitud de reconsideración en cuanto a la consolidación de los casos.[14] Respecto a la desestimación, sus argumentos se basaron en que mientras que la parte apelada pretendía desestimar este pleito dado a que, a su juicio, no procedía interpretar el *Concession Agreement*, presentó otro pleito, en otra región judicial, para que, mediante el remedio extraordinario del interdicto, se interpretara el mismo acuerdo. Siendo así, razonó que la presentación del pleito en el alfanumérico SJ2024CV10820, demostraba que había controversias entre las partes que ameritaban la concesión del remedio extraordinario de la sentencia declaratoria. Por lo anterior, solicitó, igualmente, que el foro primario reconsidera su determinación denegando la consolidación de los pleitos. De otra

---

[12] SUMAC TPI, a la Entrada Núm. 20.
[13] *Íd.*, a la Entrada Núm. 21.
[14] *Íd.*, a la Entrada Núm. 22.

parte, sostuvo que no se podían ignorar las múltiples enmiendas que ocurrieron al *Concession Agreement,* las cuales sustituyeron el derecho de exclusividad a uno de primera opción para espacios de comida y bebida.

Subsiguientemente, el 7 de enero de 2025, ocurrieron tres (3) eventos procesales. El *primero* fue que la parte apelada presentó una solicitud para replicar al escrito presentado por Aerostar.[15] Mientras que el *segundo,* fue que mediante *Orden,* notificada al día siguiente, el foro primario declaró *No Ha Lugar* la petición para replicar a la oposición, no obstante, concedió el término solicitado para replicar a la solicitud de reconsideración.[16] Finalmente, el *tercer* evento procesal fue que, a través de una segunda *Orden,* notificada también al día siguiente, se dio por sometida la solicitud de desestimación junto a la oposición para la disposición del tribunal.[17]

Así las cosas, el 21 de enero de 2025, la parte apelada presentó su oposición a la solicitud de reconsideración respecto a la consolidación de los casos.[18] Examinados los escritos, el 12 de febrero de 2025, el foro primario declaró *No Ha Lugar* la reconsideración peticionada.[19]

Finalmente, el 2 de junio de 2025, notificada el día 4, del mismo mes y año, el tribunal *a quo* emitió la *Sentencia* que nos ocupa.[20] Mediante este dictamen, declaró *Ha Lugar* la *Moción desestimación* presentada por la parte apelada y ordenó la desestimación con perjuicio la *Demanda* incoada por Aerostar.

En su dictamen, el foro de instancia concluyó que el *Concession Agreement,* pese a que sufrió varias modificaciones a través de los años, permaneció claro en que la parte apelada tenía

---

[15] SUMAC TPI, a la Entrada Núm. 23.
[16] *Íd.,* a la Entrada Núm. 24.
[17] *Íd.,* a la Entrada Núm. 25.
[18] *Íd.,* a la Entrada Núm. 26.
[19] *Íd.,* a la Entrada Núm. 27.
[20] *Íd.,* a la Entrada Núm. 28.

un derecho de exclusividad para vender comida y bebida en todos los terminales del Aeropuerto, así como que esta exclusividad únicamente cedía ante clubes privados operados por líneas aéreas, cuya admisión fuese limitada a miembros *bona fide*. Resaltó que de la *Demanda* no surgía de que CAVU fuese una línea área, mientras que, por otra parte, sí surgía de que la entrada al *Escape Lounge* no estaba limitada a miembros *bona fide* de una línea aérea, si no que cualquier pasajero que pagara el costo de admisión tenía acceso a este, lo cual constituía una venta de comida y bebida por precio adelantado. A tenor, dispuso que, aun tomando por ciertas todas las alegaciones bien hechas de la *Demand*a, no surgía de que Aerostar fuese acreedor de los remedios que solicitó. Esto puesto a que, la referida parte peticionó esencialmente que el Tribunal emitiera una sentencia declaratoria para aclarar cuáles eran los derechos y privilegios de la parte apelada frente al *Concession Agreement*, no obstante, el referido acuerdo no contaba con ambages o interpretaciones incompatibles respecto a los aludidos derechos.

Inconforme con el curso decisorio, el 18 de junio de 2025, Aerosar presentó una moción reconsideración,[21] la cual fue declarada *No Ha Lugar*.[22]

Aun en desacuerdo, el 1 de diciembre de 2025, Aerostar acudió ante esta Curia, mediante el presente recurso de apelación, en el cual esgrimió los errores siguientes:

A. ERRÓ EL TPI AL RESOLVER, EN ESTA TEMPRANA ETAPA DE LOS PROCEDIMIENTOS, QUE EL CLARO LENGUAJE CONTRACTUAL DEL CONCESSION AGREEMENT NO APUNTA A QUE LA APELADA RENUNCIÓ PAULATINAMENTE A SUS DERECHOS DE EXCLUSIVIDAD EN EL AILMM.

B. ERRÓ EL TPI AL DESESTIMAR LA DEMANDA CON PERJUICIO YA QUE, COMO MÍNIMO, EL LENGUAJE CONTRACTUAL ES CONFLICTIVO Y CREA SERIAS DUDAS QUE IMPIDEN DETERMINAR, EN ESTA ETAPA DE LOS PROCEDIMIENTOS, QUE SE DESPRENDE CON TODA Y

---

[21] SUMAC TPI, a la Entrada Núm. 29.
[22] *Íd.*, a la Entrada Núm. 39.

ABSOLUTA CERTEZA QUE AEROSTAR NO TIENE DERECHO A REMEDIO ALGUNO BAJO CUALQUIER ESTADO DE HECHOS Y DE DERECHO QUE PUEDA PROBARSE.

C. ERRÓ EL TPI AL DETERMINAR, EN ESTA ETAPA DE LAS ALEGACIONES Y CON EL RÉCORD SUBDESARROLLADO QUE TUVO ANTE SÍ, QUE LAS APELADAS OSTENTAN UN DERECHO DE EXCLUSIVIDAD Y UN DERECHO PREFERENTE QUE COEXISTEN Y SE EXTIENDEN A TODOS LOS TERMINALES DEL AILMM.

D. ERRÓ EL TPI AL DETERMINAR QUE LA ESTRUCTURA DE NEGOCIO DEL TERCERO, CAVU, CONSTITUYE UNA VENTA POR ADELANTADO QUE VIOLENTA LOS DERECHOS CONTRACTUALES DE LA APELADA, AFECTANDO ASÍ LOS DERECHOS DE UN TERCERO QUE NO ES PARTE EN ESTE PLEITO, CUANDO LAS ALEGACIONES NI EL RÉCORD SOSTIENEN TAL DETERMINACIÓN.

E. ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL EXCEDERSE EN SU DECLARACIÓN Y DE FORMA NO SOLICITADA SOBRE LOS DERECHOS DE UN TERCERO AUSENTE DEL LITIGIO, CAVU, PASANDO POR ALTO EL CLARO MANDATO DE LA REGLA 59.5 DE PROCEDIMIENTO CIVIL.

Mediante *Resolución* emitida el 11 de diciembre de 2025, concedimos a la parte recurrida hasta el 7 de enero de 2026, para expresarse en torno al recurso.

El 31 de diciembre de 2025, compareció la parte recurrida mediante *Alegato en oposición*. Con el beneficio de la comparecencia de las partes, procederemos a disponer del recurso instado.

II

**A. La Sentencia Declaratoria**

La Regla 59 de Reglas de Procedimiento Civil aborda lo relativo a las sentencias declaratorias. En específico, la Regla 59.1 de Procedimiento Civil dispone que en los casos en los cuales procede dictar sentencia declaratoria "[e]l Tribunal de Primera Instancia tendrá autoridad para declarar derechos, estados y otras relaciones jurídicas, aunque se inste o pueda instarse otro remedio. [. . .]".[23]

---

[23] 32 LPRA Ap. V, R. 59.1.

El mecanismo de sentencia declaratoria ha sido definido como remedial y profiláctico, puesto a que permite anticipar la dilucidación de los méritos de cualquier reclamación ante los tribunales.[24] Entiéndase que, la sentencia declaratoria permite establecer los derechos de las partes en anticipación de una causa de acción futura. Ahora bien, será necesario que exista un peligro potencial contra quien promueve la acción para que este mecanismo procesal proceda.[25]

Es menester subrayar que la persona que solicite la sentencia declaratoria debe tener legitimación activa para poder proceder y quedará sujeta al cumplimiento de los criterios de esta doctrina. A esos efectos, debe demostrar que: (i) ha sufrido un daño claro y palpable; (ii) el daño es real, inmediato y preciso, y no uno abstracto e hipotético; (iii) existe conexión entre el daño sufrido y la causa de acción ejercitada, y (iv) la causa de acción surge bajo el palio de la Constitución o de una ley.[26] Quiere decir que, la existencia o inminencia del daño debe real y no hipotética, aunque no medie lesión previa.[27] Además, la controversia tiene que ser justiciable, por lo que no puede ser abstracta, académica, especulativa, remota o teórica.[28]

De otra parte, la referida regla le proporciona al tribunal cierto grado de discreción. En consecuencia, "[e]l tribunal podrá negarse a dar o a registrar una sentencia o decreto declaratorio cuando tal sentencia o decreto, de ser hecho o registrado, no haya de poner fin a la incertidumbre o controversia que originó el procedimiento".[29]

---

[24] *Beltrán Cintrón et al. v. ELA et al*, 204 DPR 89, 109 (2020); *Senado de PR v. ELA*, 203 DPR 62, 71 (2019); *Alcalde Guayama v. ELA*, 192 DPR 329, 333 (2015).
[25] *Beltrán Cintrón et al. v. ELA et al*, supra, a la pág. 109; *Senado de PR v. ELA*, 203 DPR 62, a la pág. 71; *Alcalde Guayama v. ELA*, supra, a la pág. 333.
[26] *Mun. Fajardo v. Srio. Justicia et al.*, 187 DPR 245, 254-255 (2012).
[27] *Romero Barceló v. E.L.A.*, 169 DPR 460, 475 (2006).
[28] *Romero Barceló v. E.L.A.*, supra, a la pág. 475.
[29] Regla 59.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 59.3.

## B. La Regla 10.2 de Procedimiento Civil

La Regla 10.2 de Procedimiento Civil regula la presentación de defensas y objeciones a una reclamación judicial.[30] La moción de desestimación al amparo de esta regla es una defensa especial que formula el demandado para solicitar que se desestime la demanda presentada en su contra, incluso sin necesidad de formular una alegación previa.[31] En específico, la regla establece que:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) falta de jurisdicción sobre la materia;
>
> (2) falta de jurisdicción sobre la persona;
>
> (3) insuficiencia del emplazamiento;
>
> (4) insuficiencia del diligenciamiento del emplazamiento;
>
> (5) dejar de exponer una reclamación que justifique la concesión de un remedio;
>
> (6) dejar de acumular una parte indispensable.[32]

Al atender a una moción de desestimación fundamentada en que la reclamación no justifica la concesión de un remedio, el juzgador de instancia deberá tomar por cierto todos los hechos bien alegados en la demanda, así como aquellos que hayan sido aseverados de manera clara, concluyente y que de su faz no den margen a dudas.[33] A su vez, deberá interpretar las alegaciones de la demanda conjuntamente, de forma liberal y de la manera más favorable posible para la parte demandante, para así determinar si la misma es suficiente para constituir una reclamación válida.[34] Ello, puesto a que, en nuestro ordenamiento jurídico, se ha

---

[30] 32 LPRA Ap. V, R. 10.2.

[31] *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 428 (2008); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

[32] Regla 10. 2 de Procedimiento Civil, *supra.*

[33] *González Méndez v. Acción Social et al,* 196 DPR 213, 234 (2016); *Accurate Sols. v. Heritage Enviroment,* 193 DPR 423, 433 (2015); *Colón v. Lotería,* 167 DPR 625, 649 (2006).

[34] *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010); *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994).

desarrollado una política pública a favor de que los casos se ventilen en los méritos.[35] A esos efectos, la desestimación únicamente procederá cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda carece de todo mérito, o que la parte demandante no tiene derecho a obtener algún remedio.[36]

Por otra parte, es menester resaltar que la Regla 39.2 de Procedimiento Civil rige el proceso de desestimación de las demandas presentadas en el Tribunal de Primera Instancia.[37] Conforme al inciso (c) de la aludida Regla, el cual regula lo relevante a la desestimación fundada en que bajo los hechos hasta el momento probados la parte demandante no tiene derecho a remedio alguno, dispone que una desestimación bajo esta Regla 39.2, tiene el efecto de una adjudicación en los méritos, exceptuando lo que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable.[38]

### III

En el presente recurso, Aerostar, a través de sus cinco (5) señalamientos de error, muestra su inconformidad con el dictamen desestimatorio traído ante nuestra consideración. Por estar íntimamente relacionados, discutiremos el *primer* y el *tercer* error en conjunto. Igual curso tomaremos con la discusión del *cuarto* y *quinto* error. Ahora bien, el *segundo* señalamiento de error lo discutiremos por separado. Veamos.

En su *primer* y *tercer* señalamiento de error Aerostar plantea que el tribunal *a quo* incidió al resolver, en una etapa temprana de los procedimientos, que el lenguaje del *Concession Agreement* no apunta a que la parte apelada renunció a sus derechos de

---

[35] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.
[36] *Íd.*
[37] 32 LPRA Ap. V, R. 39.2
[38] 32 LPRA Ap. V., R. 39.2 (c).

exclusividad en el Aeropuerto, así como al determinar que la parte apelada ostenta tanto un derecho de exclusividad como de derecho preferente, los cuales se extienden a todos los terminales del aeropuerto. No estamos de acuerdo.

De entrada, precisa señalar que Aerostar recurre ante esta *Curia* de la decisión del foro primario de desestimar con perjuicio su *Demanda* sobre sentencia declaratoria. Sabido es que la sentencia declaratoria permite establecer los derechos de las partes, previo a la presentación de un pleito ordinario[39]. Sin embargo, es necesario que exista un peligro potencial contra quien promueve la acción para que este remedio proceda.[40] Será importante, además, que la controversia sea justiciable, es decir, que no sea abstracta, especulativa, remota o teórica.[41] A nuestro juicio, en este caso, distinto a lo planteado por Aerostar en su *Demanda*, no existe una controversia respecto a los derechos de la parte apelada bajo el *Concession Agreement* que permita la procedencia del mecanismo de la sentencia declaratoria. Veamos.

Tras revisar detenidamente el contrato en controversia, así como las enmiendas, modificaciones y *addendum* en autos, no hay duda en que, pese a las modificaciones sufridas por el *Concession Agreement* a través de los años, el acuerdo entre las partes del título siempre ha sido a los fines de que la parte apelada ostentara un derecho de exclusividad respecto a la venta de comida y bebidas, el cual se extendió a todos los terminales del aeropuerto. Asimismo, es claro que, mediante el *Suplementary Agreement* suscrito en el 2013, se añadió un derecho de selección preferente, el cual no tuvo el efecto de sustituir de modo alguno el derecho de exclusividad previamente concedido a la parte apelada.

---

[39] *Beltrán Cintrón et al. v. ELA et al*, supra, a la pág. 109.
[40] *Íd.*
[41] *Romero Barceló v. E.L.A.*, supra, a la pág. 475.

Según expusimos en nuestro relato procesal previo, Aerostar solicitó en su *Demanda* que se emitiera una sentencia declaratoria, a los fines de declarar, esencialmente, lo siguiente: (i) que la parte apelada renunció a su derecho de exclusividad para la venta de comida y bebida en el Terminal A, B y C del Aeropuerto; (ii) que cualquier derecho de exclusividad o *first refusal* de la parte apelada se limita, estrictamente, a la venta de comida y bebidas en las áreas contractualmente designadas y excluyendo el ofrecimiento de bebida y comida; (iii) que la parte apelada, conforme a las enmiendas realizadas al *Concession Agreement*, no gozaba de un derecho de exclusividad, sino, más bien, un derecho de *first refusal*, respecto a nuevos espacios que a la fecha del *Supplementary Agreement* no estaban ocupados por la parte apelada y los cuales Aerostar determinara, a su entera discreción, dedicarlos a la venta de comida y bebida. Nuestro Alto Foro ha entendido respecto al remedio de la sentencia declaratoria, que la Regla 59 de Procedimiento Civil le proporciona al juzgador de instancia cierto grado de discreción. En consecuencia, "[e]l tribunal podrá negarse a dar o a registrar una sentencia o decreto declaratorio cuando tal sentencia o decreto, de ser hecho o registrado, no haya de poner fin a la incertidumbre o controversia que originó el procedimiento".[42] Siendo así, y en vista de que no había conflictos o ambigüedades respecto a los derechos que Aerostar le solicitó al Tribunal que declarara, estamos de acuerdo con el curso tomado por el foro primario de desestimar la *Demanda*. Más aún, cuando la moción dispositiva solicitada por la parte apelada fue en virtud de la antes aludida Regla 10.2. Sabido es que una desestimación amparada en esta Regla procede cuando existan circunstancias que permitan a los tribunales determinar, sin ambigüedades, que la demanda

---

[42] *Romero Barceló v. E.L.A.*, supra, a la pág. 475.

carece de todo mérito, o que la parte demandante no tiene derecho a obtener algún remedio.[43]

Al juicio de esta Curia, la primera instancia judicial, mediante su dictamen desestimatorio, más que declarar los derechos de la parte apelada, colocó de manifiesto el texto del contrato en controversia, así como de la documentación complementaria para demostrar que no había controversia sobre los derechos cuestionados por Aerostar. Así, pues, tal cual resolvió el tribunal *a quo* no hacía falta emitir un dictamen declaratorio, ya que el contrato hablaba por sí solo. Por lo antes expuesto, coincidimos en que el *primer* y *tercer* error no se cometieron.

En su *segundo* señalamiento de error, en apretada síntesis, Aerostar arguye que el foro primario incidió al desestimar su *Demanda* con perjuicio.

Según expusimos en nuestra exposición doctrinal, la Regla 39.2 de Procedimiento Civil rige el proceso de desestimación de las demandas presentadas en el Tribunal de Primera Instancia.[44] Conforme al inciso (c) de la aludida Regla, una desestimación bajo esta Regla 39.2, tiene el efecto de una adjudicación en los méritos.[45] A tenor, y en vista de que el tribunal *a quo* desestimó la demanda luego de determinar que, aun tomando por ciertas todas las alegaciones bien hechas de la *Demanda*, no surgía de que Aerostar fuese acreedor de los remedios que solicitó, colegimos que el referido foro correctamente desestimó con perjuicio el pleito de título. En consideración a lo anterior, disponemos que el *segundo* señalamiento de error no se cometió.

Finalmente, en su *cuarto* y *quinto* señalamiento de error, Aerostar señala que el tribunal se excedió en su declaración sobre

---

[43] *González Méndez v. Acción Social et al.,* supra, a la pág. 235.
[44] 32 LPRA Ap. V, R. 39.2.
[45] *Íd.*

los derechos de un tercero ausente del litigio, pasando por alto el claro mandato de la Regla 59.5 de Procedimiento Civil.[46] Particularmente al determinar que la estructura de CAVU constituye una venta por adelantado. Estamos de acuerdo. Ahora bien, el hecho de que se hayan cometido no significa que amerita la revocación del dictamen apelado. Veamos.

Mediante la sentencia apelada, la primera instancia judicial, en suma, determinó que, en vista de que Aerostar peticionó que el Tribunal emitiera una sentencia declaratoria para aclarar cuáles eran los derechos y privilegios de la parte apelada frente al *Concession Agreement*, y dado a que el referido acuerdo no contaba con ambages o interpretaciones incompatibles respecto a los aludidos derechos, no procedía el remedio solicitado. En consideración a lo anterior, la primera instancia judicial no estaba facultada para hacer interpretaciones contractuales. Ello, puesto a que determinó que, en este caso, no procedía una sentencia declaratoria. Aun así, el foro primario realizó una serie de interpretaciones contractuales, incluso, como bien señala Aerostar, sobre la estructura de CAVU, quien no era parte ni del pleito ni del contrato en cuestión. La Regla 59.5 de Procedimiento Civil es clara en que ninguna declaración perjudicará los derechos de personas que no sean partes en el procedimiento.[47]

No obstante, lo anterior, y pese a que entendemos que los referidos errores se cometieron, recordemos que "la apelación o revisión se da contra la sentencia o decisión apelada; es decir, contra el resultado y no contra sus fundamentos".[48] En vista de que estamos de acuerdo con el curso decisorio del tribunal de instancia,

---

[46] 32 LPRA Ap. V, R. 59.5.
[47] *Íd.*
[48] *Pueblo de Puerto Rico v. José Pérez Rodríguez*, 159 DPR 554, 566 (2003); *Díaz Martínez v. Policía de Puerto Rico*, 134 DPR 144, 157 (1993); *Raquel Álvarez Figueredo v. Sebastián González Lamela*, 134 DPR 374, 380 (1993); *Asociación de Pescadores de Punta Figueras, Inc. et al. v. Marina de Puerto del Rey, Inc. et al.*, 155 DPR 906, 920 (2001).

respecto a la desestimación de la demanda presentada por Aerostar, nos es forzoso confirmar el dictamen apelado, aunque sin avalar las interpretaciones contractuales efectuadas. Las cuales deben ser entendidas por no puestas, por ser lo procedente en derecho.

Finalmente, y tras un análisis detenido y sosegado de la totalidad de los autos ante nuestra consideración, resolvemos confirmar el dictamen apelado.

IV

Por los fundamentos que anteceden, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones